```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA
```

ROBERTA ANNE RAU,                  )
                                   )
         Plaintiff,                )
                                   )
                                   )  Case No. CIV-20-170-JFH-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
         Defendant.                )

## REPORT AND RECOMMENDATION

Plaintiff Roberta Anne Rau (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 47 years old at the time of the ALJ's decision. She has at least a high school education and worked in the past as a physician. Claimant alleges an inability to work beginning on October 31, 2016, due to limitations resulting from depression, anxiety, bipolar disorder, back and foot pain, shortness of breath, morbid obesity, and migraines.

### Procedural History

On July 10, 2017, Claimant filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*)

of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On April 9, 2019, ALJ Deirdre O. Dexter conducted a hearing in Tulsa, Oklahoma, at which Claimant testified. On May 17, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on April 6, 2020, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to demonstrate how she considered Claimant's morbid obesity in combination with her diagnosed osteoarthritis to inform her conclusion that Claimant retained the capacity to perform the prolonged standing and walking required of light work; and (2) finding that substantial evidence supported her finding that despite Claimant's severe mental impairments and the side effects

of medication that Claimant retained the capacity to perform the demands of work on a regular and continuing basis.

### Consideration of Obesity

In her decision, the ALJ found Claimant suffered from severe impairments of obesity, bipolar disorder, and migraines. (Tr. 17). She determined Claimant could perform light work with additional limitations. Claimant could lift, carry, push, or pull up to twenty pounds occasionally and ten pounds frequently, sit up to six hours in an eight-hour workday, and stand and/or walk up to six hours in an eight-hour workday. She could frequently stoop or crouch, occasionally climb ramps or stairs, kneel, or crawl. Claimant's job should not involve climbing ladders, ropes, or scaffolds. She could perform simple, routine tasks and was able to interact with supervisors as needed to receive work instructions. Claimant could work in proximity to co-workers, but the job should not involve close communication or cooperation with co-workers to complete work tasks. Claimant's job should not involve interacting with the general public or more than ordinary and routine changes in the work setting or work duties. (Tr. 21).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of router, marker, and mail clerk, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 29). As a result, the ALJ concluded Claimant was not under a disability from

5

October 31, 2016, her amended onset date, through the date of the decision. (Tr. 29).

Claimant contends that even though the ALJ determined her obesity was a severe impairment, she failed to properly consider Claimant's morbid obesity combined with her other impairments, including osteoarthritis, thereby ignoring the requirements of Social Security Ruling 02-01p. She asserts that had the ALJ considered all the evidence and the effects of her morbid obesity on her other impairments, the ALJ could not have determined Claimant had the RFC to perform the prolonged standing and walking required of unskilled light work.

Social Security Ruling 02-1p requires an ALJ consider that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately" when assessing the RFC. Soc. Sec. Rul. 02-1p, 2000 WL 628049, *1 (Sept. 12, 2002). "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id*. at *6. Thus, "assumptions about the severity or functional effects of obesity combined with other impairments [will not be made]." *Id*.

The ALJ considered Claimant's obesity in the decision and in combination with her other severe and non-severe impairments, including Claimant's osteoarthritis. The ALJ determined Claimant's obesity was a severe impairment and her osteoarthritis was a non-

severe impairment. (Tr. 17-18). She noted that "[t]here is no evidence to support the conclusion that any of the foregoing impairments cause a functional limitation singularly or in combination with other impairments." (Tr. 18).

The ALJ then discussed the evidence, including that Claimant requested an anti-inflammatory medication for her arthritis in January of 2017, after complaining of several joints bothering her, especially her feet. Claimant complained to her doctor that "she walks and stands often at work and has difficulty tolerating this especially towards the end of the day[.]" Claimant, however, exhibited no swollen joints, no redness, and no increased heat. (Tr. 18, 24, 348). In April of 2018, Claimant's weight was noted to be 297 pounds, and she exhibited normal muscle strength and tone and normal gait. (Tr. 18, 434). When making her RFC determination, the ALJ discussed Claimant's obesity in detail, noting her body mass index and the changes in her weight. The ALJ specifically found that "the [C]laimant's obesity, in combination with her other impairments, somewhat reduces the [C]laimant's capability for work activity. A reduction in capacity to work at the light exertion range with some further appropriate work restrictions is, therefore, warranted." (Tr. 23).

Moreover, the ALJ found that state agency reviewing physician's opinion that Claimant could perform medium work was unpersuasive, indicating it was not consistent with the record

7

evidence. The ALJ determined that "[d]ue to the [C]laimant's obesity, in combination with her other impairments, . . . the medical record better supports a [RFC] for the [C]laimant to perform work at the light exertion level, with postural restrictions." (Tr. 27). Further, the ALJ considered Claimant's testimony, which did not include complaints regarding her arthritis and her ability to stand and/or walk. (Tr. 22-23, 50-57).

The ALJ specifically considered Claimant's obesity in combination with her other impairments and referenced that she was limiting Claimant to light work with additional postural limitations in the RFC to account for Claimant's obesity. (23, 27-28). This is sufficient to establish that Claimant's obesity was considered with her other impairments in the RFC.

### Assessment of Mental RFC

Claimant also asserts that substantial evidence does not support the ALJ's finding that she retained the capacity to perform the demands of work on a regular and continuing basis, especially in light of her severe mental impairment and side effects of medication. Specifically, Claimant argues the record demonstrates her depression and the side effects of medication caused her to experience low energy, suffer from lethargy, and sleep excessively. She maintains that these issues were noted by consulting psychologist, Joseph James, Psy.D., LPC, along with his

opinion that Claimant's ability to execute tasks of daily living and adaptive functioning were severely impaired. Claimant maintains that the ALJ failed to explain how this portion of Dr. James' opinion was consistent with her ability to complete tasks and adapt to work.

Defendant responds that the ALJ's RFC assessment aligns with Dr. James' opinions and that the portion of his opinion referenced by Claimant is taken out of context, as it related to her money management skills with her medical practice. Moreover, Defendant asserts that Dr. James never determined that severe impairments in adaptive functioning and the ability to execute activities of daily living exhibited in running a medical practice precluded Claimant from performing unskilled work.

Claimant underwent a mental status examination with Dr. James on October 17, 2017. Claimant reported she suffered from a depressed mood most of the day, spent 18 hours a day either in bed asleep or "laying around," and she had "a loss of energy with daily feelings of worthlessness and hopelessness." Dr. James' observation of Claimant's behavior and mental status during the evaluation "suggest[ed] she is capable of engaging in common work/learning-related mental tasks as she appeared oriented, well kept, and she was able to maintain adequate and appropriate eye contact." His diagnosed Claimant with major depressive disorder, unspecified, with anxious distress.

9

When noting the effects of her identified mental impairments on her functioning, with regard to her activities of daily living, Dr. James concluded "[C]laimant's capacity to execute tasks of daily living and adaptive functioning (i.e. self-care, grooming, shopping, cooking, house cleaning, and money management) is estimated to be severely impaired for occupational and educational purposes as the [C]laimant reportedly has spent more than $200K supporting a medical practice while not seeing patients." Dr. James also noted in his report that Claimant had complained that all the money she had to support her practice was "gone now" because she was not able "to adequately function on a day-to-day basis." Dr. James further estimated that Claimant's ability to understand work/school related activities, remember work/school information, and concentrate and persist in work/school related tasks was adequate. He found her ability to socially interact and adapt in a work/school related environment was moderately impaired based upon Claimant's history of poor coping and social isolation. Dr. James concluded Claimant's overall prognosis was fair and functional improvements were expected, but a full recovery was in question. (Tr. 392-97).

Because Claimant filed her claims after March 27, 2017, the medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, she must "articulate" in her decision "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [she] will articulate

how [she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). She may not "pick and choose among medical reports, using portions of evidence favorable to her position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability"). If she rejects an opinion completely, the ALJ must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

The ALJ summarized Dr. James' opinion in the decision, including Claimant's complaints that she slept or was in bed approximately 18 hours per day, had a loss of energy, and felt worthless and hopeless. She mentioned his opinion that "[C]laimant's activities of daily living and adaptive functioning was severely impaired for occupational and educational purposes." (Tr. 26). After summarizing Dr. James' report, the ALJ found his opinion persuasive with the following explanation:

> I have considered the opinion of consultative psychological examiner, Joseph James, Psy.D., LPC (Exhibit 3F) who opined that the [C]laimant was capable of engaging in common work/learning-related mental tasks; had adequate ability to understand, adequate memory, and adequate concentration, and only moderately impaired ability to socially interact and adapt. This was based on the [C]laimant's history of poor coping and social isolation. I find his opinion to be persuasive as it is consistent with the medical evidence of record.

(Tr. 27).

When making her determination of how persuasive she viewed Dr. James' opinions, however, the ALJ made no mention of the opinion that "Claimant's capacity to execute tasks of daily living and adaptive functioning (i.e. self-care, grooming, shopping, cooking, house cleaning, and money management) [was] estimated to be severely impaired for occupational and educational purposes[.]" Moreover, she provided no explanation in the decision for why it was excluded. Although the ALJ does not have to give any "specific evidentiary weight" to Dr. James' opinion, she cannot pick and choose certain opinions that support her analysis and then fail to explain why she is rejecting others that do not. *See Hardman*, 362 F.3d at 681.[2] Because Dr. James' opinion that Claimant's tasks of daily living and adaptive functioning are estimated to be severely impaired for occupation and educational purposes, the ALJ should

---

[2] The Court cannot make the determination for the ALJ. *See Haga*, 482 F.3d at 1207 ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

13

properly address the opinion on remand and determine whether it affects Claimant's ability to perform work.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be REVERSED and the case REMANDED for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 31st day of August, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE